UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:15-cv-00158-FDW

| RONNIE D. JONES, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

THIS MATTER is before the Court on Plaintiff Ronnie D. Jones's Motion for Summary Judgment (Doc. No. 9), filed on November 30, 2015, and Defendant Acting Commissioner of Social Security Carolyn W. Colvin's ("Commissioner's") Motion for Summary Judgment (Doc. No. 15), filed on March 14, 2016. Plaintiff seeks judicial review of an unfavorable administrative decision on his application for disability benefits.

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and the Commissioner's decision is REMANDED.

**I. Background**

Jones filed an application for a period of disability and disability insurance benefits under Title II of 42 U.S.C. § 1383, and for supplemental security income payments under Title XVI of 42 U.S.C. § 1383, on August 11, 2011, alleging a disability onset date of June 19, 2010. (Doc. No. 8-6). The claim was initially denied on January 9, 2012, (Doc. No. 8-4), and again upon

1

reconsideration on April 23, 2012.  Id.  Subsequently, on June 18, 2012, Jones filed a written request for an administrative hearing (Doc. No. 8-5), and Administrative Law Judge Sarah B. Stewart ("ALJ") held a hearing on August 1, 2013, at which Jones was represented by counsel (Doc. 8-3).  Also present was Karl S. Weldon, the appointed vocational expert ("VE").  (Id.).  On January 30, 2014, the ALJ issued an unfavorable decision, finding that Jones was not disabled.  Id.  Jones timely requested review by the Appeals Council.  Id.  By notice dated May 26, 2015, the Appeals Council denied Jones' request for further administrative review.  Id.  Thus, the ALJ's decision of January 30, 2014, became the final decision of the Commissioner.

Jones timely filed this action on July 25, 2015, (Doc. No. 1) and the parties' Motions for Summary Judgment are now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. Standard of Review

Judicial review of a final decision of the Commissioner in social security cases is authorized pursuant to 42 U.S.C. § 405(g), which states "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  Review of such decisions is limited to consideration of (1) whether substantial evidence supports the Commissioner's decision and (2) whether the Commissioner applied the correct legal standards.  Hays v. Sullivan, 907 F. 2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 390 (1971); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir.1987)).  District courts do not review a final decision of the Commissioner de novo.  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.1972).  A reviewing court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence.  Id.  Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir.2001) (quoting Richardson, 402 U.S. at 401). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966), overruled by implication on other grounds by Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003)); see also Parker v. Kraft Foods Global, Inc., No. 3:07–cv–87, 2010 WL 1929555, at *5 (W.D.N.C. May 12, 2010). In reviewing for substantial evidence, a court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Barnes ex rel. T.J. v. Colvin, No. 4:12–cv–254, 2014 WL 126039, at *1 (E.D.N.C. Jan. 13, 2014) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir.1996), superseded by regulation on other grounds, 20 C.F.R. § 416.927). The ALJ, and not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. Hays, 907 F.2d at 1456. In reviewing the Commissioner's decision, the court is not meant to reweigh conflicting evidence, make credibility determinations, or substitute the reviewing court's judgment for that of the Administrative Law Judge ("ALJ"). Hancock v. Astrue, 667 F. 3d 470, 472 (4th Cir 2012) (citing Johnson v. Barnhart, 434 F. 3d 650, 653 (4th Cir. 2005). In the situation where conflicting evidence allows reasonable minds to differ as to whether the claimant is disabled, the responsibility for that decision falls on the ALJ. Id.

### III. Analysis

Disability for the purposes of the Social Security Administration is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment [or combination of impairments] which can be expected to result in death or which

3

has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505(a).

In order to determine disability, the Commission uses a five step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). First, the Commission considers whether the claimant/plaintiff is working in "substantial gainful activity," the Commission will find the claimant not disabled, regardless of any other factors. Id. If the claimant is not participating in "substantial gainful activity," the Commission next considers the medical severity of the claimant's impairment(s). Id. The claimant must have a severe physical or mental impairment, or combination of impairments, one which significantly limits the claimant's physical or mental ability to perform work activities and has done so, or will be expected to do so, for greater than 12 months, unless impairment is expected to result in death. Id. (citing to 20 C.F.R. § 404.1509). Third, the Commission will determine whether the claimant's impairment meets the requirements of one of the Social Security listings as well as the duration requires of §404.1509 supra. 20 C.F.R. § 404.1520(a)(4). If the claimant's impairments meet one of the listings, the claimant will be considered disabled, and the analysis will end at that stage. Id. If, however, the claimant's impairment does not meet the requirements of one of these listings, the Commission then assesses the claimant's Residual Functional Capacity ("RFC"), comparing that RFC to the claimant's past relevant work to determine if the claimant is disabled from his past type of employment. Id. If the claimant can perform his past relevant work, he will be determined as not disabled. 20 C.F.R. § 404.1560(b). However, if the claimant is unable to perform his past relevant work, the Commission will then determine if, based on the claimant's RFC, age, education, and work experience, claimant would be able to make an adjustment to other types of work. 20 C.F.R. §

404.1520(a)(4). If the Commission determines there are other types of work the claimant can perform with his current RFC, and that this work exists in significant numbers in the national economy, the claimant will be determined as not being disabled. 20 C.F.R. § 404.1560(c).

In the case at bar, the parties do not raise an issue about the first three steps of the process. Here, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since June 19, 2010, the alleged onset date of his disability. (Doc. No. 8-3). The ALJ then determined that Plaintiff had the following severe impairments: Diabetes Mellitus Type II, Coronary Artery Disease ("CAD") with a history of myocardial infarction and stent placement, Anxiety Disorder, and Major Depression Disorder. Id. In so doing, the ALJ noted that Plaintiff also had other non-severe impairments, such as: history of alcohol abuse and dependence, history of polysubstance abuse, Dyslipidemia, Hypertension, Restless Leg Syndrome ("RLS"), and Obesity. Id. Finally, the ALJ reviewed the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 and found none of the conditions, standing alone or in combination, met the requirements for any of these listings. Id. Therefore, disability could not be determined without proceeding to the final two steps of the process. It is these final steps that are at issue in the present case.

In the fourth step of the process, the ALJ found that Plaintiff's RFC would allow him to perform light work, as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) with the following additional limitations:

> I specifically find that he can lift and carry up to 20 pounds occasionally and 10 pounds frequently. He can sit, stand, and walk for up to 6 hours, each, during an 8-hour workday. He can never balance on slippery of moving surfaces or climb a ladder, rope, or scaffold but can occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl. He must avoid all exposure to extreme heat/cold and sunlight and requires an indoor occupation. He is precluded from exposure to operational control of moving machinery and unprotected heights. He can understand, remember, and carry out simple instructions in a work environment free of fast-

paced production requirements with only simple work-related decisions, few (if any) changes in the work place, and only occasional public contact.

Id. at 26. While these restrictions were found to preclude Plaintiff from resuming his past relevant work, the ALJ found there were other forms of work Plaintiff could perform. Id. The ALJ ruled that Plaintiff was not disabled within the requirements of the Social Security Disability Act. Id.

On appeal, Plaintiff claims that the ALJ erred in the following ways: (1) failure to give a complete function-by-function analysis and explanation for the nonexertional mental functions associated with Plaintiff's mental impairments; (2) failure to provide legally sufficient reasons supported by substantial evidence for ALJ's finding that Plaintiff's testimony was not credible; and (3) failure to explain why limitations found in medical opinions to which the ALJ gave great weight were not included in the RFC. (Doc. No. 10).

Plaintiff first alleges that the ALJ did not properly account for his "mild" and "moderate" ratings, showing the degree of his mental functional limitations, when the ALJ determined Plaintiff's RFC. In order to evaluate mental impairments, the Commission follows a special technique throughout the administrative review process. 20 C.F.R. § 404.1520a. Part of this technique is for the ALJ to rate the degree of Plaintiff's functional limitations in four specific areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensating. 20 C.F.R. § 404.1520(c)(3). These areas are rated on a scale from no limitation to a level of severity that is incompatible with the ability to perform those work-related functions. 20 C.F.R. § 404.1520a.

Here, the ALJ found Plaintiff was mildly restricted in activities of daily living. (Doc. No. 8-3). In Plaintiff's Form 3373 Function Report, Plaintiff alleged that his daily activities mostly consisted of taking medications and sending his daughter to school. Id. Plaintiff alleged some

problems with performing personal care such as shaving, cooking for himself, and using the toilet. Id. However, Plaintiff admitted to the ALJ that he was able to prepare simple meals, wash dishes, and wash laundry. Id. Plaintiff's girlfriend and roommate also submitted a Form 3380 Third Party Function Report, wherein she stated Plaintiff cared for their daughter during the day and has no issues caring for his personal needs. Id. In a psychological consultative examination ("CE") conducted by Anthony Carraway on December 28, 2011, Plaintiff said that he spends his days applying for jobs, going to treatment, and doing remodeling work on his house to stay occupied. Id.

Due to the above evidence submitted to and reviewed by the ALJ, the ALJ's finding of only a "mild" restriction in activities of daily living is supported by substantial evidence.

The ALJ next found Plaintiff has "mild" difficulties in social functioning. In Plaintiff's Form 3373 Function Report, Plaintiff did not allege any problems getting along with others or in interacting with authority figures. (Doc. No. 8-3). Also, during the CE with Dr. Carraway, Plaintiff was noted to have normal speech, good eye contact, no psychomotor agitation, no psychomotor retardation, no difficulty with communication skills, and no thought disorder. (Doc. No. 8-8). Additionally, Dr. Fiore, another licensed psychologist, in his assessment dated April 12, 2012, found that Plaintiff may have "mild problems relating to fellow coworkers and supervisors due to irritability and sad mood." Despite Dr. Fiore's opinion, substantial evidence supports the ALJ's decision to give weight to Plaintiff's statement in his Form 3373 Function Report, in which Plaintiff answered that he gets along with everyone and has no history of interpersonal issues on a job. (Doc. No. 8-9 and 8-7, respectively). Therefore, the ALJ's determination that Plaintiff only suffers from "mild" difficulties in social functioning is supported by substantial evidence.

Next, the ALJ found that Plaintiff has "moderate" difficulty with regards to concentration, persistence, or pace. The ALJ relied on testing completed both by Drs. Carraway and Fiore. Testing completed by Dr. Carraway found that Plaintiff's recent and remote memory was normal. (Doc. No. 8-8). Plaintiff was also able to recall three out of three objects immediately, and he could recall two out of three objects after a delay. Id. Dr. Carraway's assessment also notes Plaintiff was able to recite five numbers forward and two numbers backward. Id. Furthermore, in Dr. Fiore's consultation, Plaintiff was able to recall five out of five common objects and was noted to have fair recent memory and good remote memory. (Doc. No. 8-9). At that CE, Plaintiff was able to recall six digits forward and 4 digits backward. Id. Dr. Fiore also noted Plaintiff only had a moderate amount of difficulty in maintaining concentration when performing a serial 3's test. Id. The ALJ gave great weight to the findings and opinions of Drs. Carraway and Fiore and agreed Plaintiff has work-related limitations in this area. (Doc. No. 8-3).

The ALJ's finding of "moderate" impairment of concentration, persistence, or pace is based on substantial evidence, as evidenced by the ALJ's reliance on Drs. Carraway's and Fiore's findings. Dr. Carraway's report states that Plaintiff had logical and goal-directed thoughts and that he was able to maintain concentration well enough to only miss one random letter in testing. (Doc. No. 8-8). Dr. Carraway further stated in his report that Plaintiff "had minimal impairment of attention and concentration . . . his ability to understand, retain, and perform instruction is minimally to mildly impaired. His ability to perform simple repetitive tasks and to persist at those tasks appears rather minimally impaired." Id. Similarly, Dr. Fiore's assessment states that "Mr. Jones is able to understand and follow simple work-related instruction. His attention span is

reduced, but adequate to perform simple and repetitive tasks for moderate periods of time." (Doc. No. 8-9).

However, while the findings of the ALJ concerning Plaintiff's concentration, persistence, or pace appear may be based on substantial evidence, there is a matter which must be resolved. Plaintiff's arguments to this Court allege error in ALJ's lack of resolution of an issue raised in the testimony of the VE. (Doc. No. 10). During the hearing conducted by the ALJ, the VE identified alternative occupations suitable for Plaintiff; however, the ALJ then asked if there would be any such jobs for a person who "could not sustain even simple, routine repetitive tasks on a regular and continuing basis for eight hours a day, five days a week, for a 40 [hour] workweek or equivalent work schedule." (Doc. No. 8-3). In response to that query, the VE stated that there would be no work that person could perform at that level of restriction. Id. The ALJ continued, asking the VE the prospects of workability if the hypothetical person exceeded limits on absences or during-work breaks. Id. Again, the VE advised the ALJ that exceeding these limits would eliminate the jobs the VE had described as acceptable alternatives. Id.

It is unclear whether the ALJ intended for such restrictions to become final for Plaintiff, as such time restrictions or limitations were not mentioned or explained in the discussion of the determination of the RFC. Accordingly, the ALJ has not properly resolved this conflict in the case. It is unclear to this Court why the ALJ asked the VE about work prospects with time limitations when none appear to be mentioned by the CE assessments to which the ALJ attributes great weight. It is also unclear why the ALJ did not explain in the hearing decision why she asked that question of the VE and why the resulting answer of no workability was given no weight.

The determination at the final step of the disability decision that Plaintiff could, based on his RFC, engage in substantial gainful activity via alternate occupations found in the national economy requires more than the finding that Plaintiff can find a job within the RFC. This finding also requires that Plaintiff can "hold whatever job he finds *for a significant period of time*." Robinson v. Colvin, 31 F. Supp. 3d 789 (E.D.N.C. 2014) (emphasis added) (citing Singletary v. Bowen, 798 F. 2d 818, 822 (5th Cir. 1986)).

The Singletary test's use has been prevalent throughout the Fourth Circuit, specifically in North Carolina and Virginia. See Mitchell v. Astrue, 2007 WL 4570907 (E.D.N.C. 2007); Cramer v. Colvin, 2014 WL 693327 (E.D.N.C. 2014); Mitchell v. Colvin, 6 F. Supp. 3d 646 (E.D.N.C. 2014); Robinson v. Colvin, 31 F. Supp. 3d 789 (E.D.N.C. 2014); Nixon v. Colvin, 2014 WL 4659483 (M.D.N.C. 2014); Rinaca v. Colvin, 2016 WL 1223074 (E.D.Va. 2016). This test requires the ALJ to find that Plaintiff could obtain *and maintain* for a significant period of time one of the alternate occupations noted by the VE during the hearing. Singletary qualifies, however, that a determination that a claimant would not be able to maintain workability for a significant period of time must be supported by more than Plaintiff's personal history, such as by the medical evidence. 798 F. 2d 818 at 822.

## IV. Conclusion

The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one that "lies within the sound discretion of the district court." Edwards v. Bowen, 672 F. Supp. 230, 237 (E.D.N.C. 1987); see also Evans v. Heckler, 734 F. 2d 1012, 1015 (4th Cir. 1984). When "[o]n the state of the record, [plaintiff's] entitlement to benefits is wholly established," reversal for award of benefits rather than remand is appropriate. Crider v. Harris,

624 F.2d 15, 17 (4th Cir. 1980). The Fourth Circuit has held that it is appropriate for a federal court to "reverse without remanding where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." Breeden v. Weinberger, 493 F.2d 1002, 1012 (4th Cir. 1974). Remand, rather than reversal, is required when the ALJ fails to explain his reasoning and there is ambivalence in the medical record, precluding a court from "meaningful review." Radford v. Colvin, 734 F.3d 288, 296 (4th Cir. 2013).

The Court in its discretion finds that remand is appropriate in this instance for further explanation and clarification of the ALJ's decision. The ALJ did not explain the basis for discussing less than full time capacity in the hearing but then not addressing her rejection of this capacity in the hearing decision. In light of the necessity for the ALJ to find that Plaintiff must be able to find and maintain an alternate occupation for substantial and gainful employment, the Court finds that remanding this matter would allow an explanation of the ALJ's rationale as to her queries regarding less than full time capacity. Without such clarification, the Court is not able to fully conduct meaningful review of the ALJ's decision.

As to the other two allegations of error found in Plaintiff's Memorandum in Support for Motion of Summary Judgment, the Court finds that, on remand, the ALJ is permitted to revisit these findings and conclusions.

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 9) is GRANTED; Defendant's Motion for Summary Judgment is DENIED (Doc, No. 15); and the ALJ's determination is REMANDED for further proceedings.

IT IS SO ORDERED.

Signed: September 20, 2016

Frank D. Whitney
Chief United States District Judge